Michael Machat, Esq. SB#109475
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Telephone: (310) 860-1833
Email: michael@machatlaw.com

Attorneys for Plaintiff
Vampire Family Brands, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VAMPIRE FAMILY BRANDS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>VAMPIRE COFFI, CALUTECH, INC., dba OLD CHICAGO COFFEE CO, DOUG FREITAG, SHOPIFY, INC, ELIZABETH MERRITT, and DOES 1 – 20,<br><br>Defendants. | CASE NO. 2:23-cv-04735<br><br>**FIRST AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DILUTION/TARNISHMENT AND CYBERSQUATTING.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Vampire Family Brands, LLC hereby alleges and asserts:

**I.     JURISDICTION AND VENUE**

1.     Plaintiff brings this action for injunctive relief and damages arising out of the unauthorized, unfair, and deceptive competitive practices of

---

**COMPLAINT**

Defendants, and each of them, in connection with the commercial use and exploitation of trademarks in violation of the Lanham Act.

2. This action arises under the Trademark Laws of the United States, including, particularly, Section 43 of the Lanham Act, 15 U.S.C. § 1125. Jurisdiction is conferred on this Court by 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), in that this case arises under the Trademark Laws of the United States, 15 U.S.C. Sections 1051, *et seq.*

3. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2).

## II.  THE PARTIES

4. Plaintiff, Vampire Family Brands, LLC ("Vampire Family Brands") is a Delaware Limited Liability Company with its main business office located in Los Angeles County, California.

5. Defendant VAMPIRE COFFI is a business of a type unknown doing business throughout the United States, offering coffee for sale throughout the United States, and selling coffee throughout the United States and into this district via the infringing website, www.vampirecoffi.com.

6. Defendant CALUTECH, INC., dba OLD CHICAGO COFFEE CO, ("Calutech) is upon information and belief an Illinois Corporation and the manufacturer and distributor of the accused coffee product in this case. Defendant Calutech is the trademark registrant of OLD CHICAGO COFFEE.

7. Defendant DOUG FREITAG ("Freitag") is upon information and belief the President of Defendant Calutech and the person at Defendant Calutech personally responsible for offering and shipping the accused product into this district.

8. Defendant SHOPIFY INC ("Shopify") is upon information and belief a Canadian Corporation with a US headquarters in San Francisco, California. Defendant Shopify encourages any person in the world to set up a

shop on their Shopify network and to dropship products, including coffee, and in exchange Defendant Shopify receives monies from all sales of products made on its Shopify stores, including transaction fees of up to 2% of the selling price and a credit processing fee of up to 2.9% + 30 cents per transaction. Defendant Shopify does not vet anyone wanting to use its services, and in this case obviously Defendant Shopify did not vet its co-defendants use of VAMPIRE for sales of coffee.

9. Defendant ELIZABETH MERRITT is upon information and belief a resident of Los Angeles, California and the owner of the url www.vampirecoffi.com which is a Shopify store, hosted by Defendant Shopify with orders fulfilled by Defendants Calutech and Freitag.

10. Within the past year, Defendants have solicited orders for products that infringe Plaintiff's trademarks and have sold and shipped the infringing product to residents of Los Angeles, California and Defendants continue to offer the infringing product for sale to residents of California, including those residing within this district.

11. Within the past month, Defendants have solicited orders for products that infringe Plaintiff's trademarks and have sold and shipped the infringing product to residents of Los Angeles, California, and Defendants continue to offer the infringing product for sale to residents of California, including those residing within this district.

12. Plaintiff does not know the true names or capacities of defendants named herein as DOES 1 through 20 inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names, capacities, and circumstances alleging the liability of said defendants at such time as the same is ascertained. Plaintiff is informed and believes and, on that basis, alleges that each fictitiously named defendant is responsible in some manner for the occurrences herein alleged

and that Plaintiff's damages as herein alleged were proximately caused by the conduct of such defendants.

13. Plaintiff is informed, believes, and alleges that, at all times herein mentioned, each of the Defendants were the agents, servants, employees, or attorneys of their codefendants and, in doing the things hereinafter alleged, were acting within the purpose, course, and scope of such agency and employment, and with the authority, permission, and consent of their codefendants.

### III.  FACTS

**A.  Plaintiff's Vampire Family Trademarks**

14. Vampire Family Brands, via its predecessors in interest, has been marketing for many years food and beverages under several federally registered trademarks consisting of or relating to the term VAMPIRE (collectively, the Vampire Family marks). The Vampire Family marks include the following federal registrations, many of which are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065:[1]

| Mark | Reg. No. | Goods/Services |
|---|---|---|
| VAMPIRE | 2263907* | Wine |
|  | 3290011* | Glass- and beverage-ware |
|  | 3669827* | Chocolate and coffee |
|  | 3978444* | Restaurant and bar services |
|  | 4776927 | Olive oil and balsamic vinegar |

---

[1] Plaintiff's marks that have become incontestable through their use—if not all of the above marks—are denoted by an asterisk (*) following their U.S. Registration Numbers.

|  | 5444375 | Pre-mixed alcoholic beverages, other than beer based; pre-mixed alcoholic cocktails |
|---|---|---|
|  | 6329522 | Hamburger sandwiches |
| VAMPIRE TACO | 4939034 | Tacos |
| VAMPYRE | 3082097* | Distilled spirits |
| SIP THE BLOOD OF THE VINE | 3079403* | Wine and distilled spirits |
| TASTE THE IMMORTALITY | 3167606* | Wine and distilled spirits |
| TRUEBLOOD TB | 6872784 | Wine |

15. The origin of Vampire wine, and Vampire Family Brand's claim of right, goes back to 1988, when its founder released a French-bottled Algerian Syrah under the brand name Vampire. The first sale was to MCA Records and Alice Cooper, and the wine was promoted under the slogan, "Sip the Blood of the Vine." Although the labels have changed over the years, along with the sourcing from Algeria to Italy then to Transylvania and, finally, to Napa, the marketing has remained similarly playful.

16. However, as the source of the wine shifted from Transylvania, Romania to Napa, California, the marketing evolved to emphasize that the quality of the wine was actually extremely good, with Vampire wine having won numerous gold medals throughout the years and scores of 90 Points and higher from various critics.

17. Plaintiff, via its predecessors in interest, expanded its wine and spirits business into gourmet quality foods, including Vampire Fine Belgian Chocolate, Vampire Gourmet Coffee, Vampire Gourmet Olive Oil, and Vampire Gourmet Balsamic Vinegar.

18. Plaintiff's VAMPIRE family of brands are available for the world to see on its website www.Vampire.com. They have received coverage in various national magazines and newspapers, including Maxim, InStyle, Elle, Shape, Star Magazine, the New York Times, the LA Times, the Houston Chronicle, the Star Tribune, the Chicago Sun Times, and many more. (*See* Exhibit A). In addition, Plaintiffs' VAMPIRE family of brands have been shown on various national television shows, such as The View with Oprah Winfrey, Anderson Cooper (with Ashley Greene from Twilight fame), CNN Headline News, MTV's Viva La Bam, Food TV, and many more. (*See* Exhibit A).

19. Plaintiff markets its brands through a national network of wholesalers and via www.vampire.com. For instance, VAMPIRE wine can be found nationally in chains of retail stores, including the Safeway supermarkets, Publix markets, Cost Plus World Market, the Yard House chain of restaurants, and elsewhere.

20. Plaintiff, through its predecessors in interest, has been selling its VAMPIRE Coffee for more than fourteen years.

21. Plaintiff sells its VAMPIRE coffee from its website www.vampire.com as well as on Amazon.com and elsewhere, including to restaurants and cafes.

22. Plaintiff and its associates have worked hard to ensure that they put the best wine in the bottle as possible. Over the last few years, Plaintiff's Vampire family of wines have received great reviews and won gold medals in many competitions, including the San Francisco Chronical Wine Competition for its Vampire Merlot, Vampire Cabernet Sauvignon, and Vampire Pinot Noir; the Los Angeles Invitational Wine challenge for its Vampire Cabernet Sauvignon and Vampire Pinot Noir; the Access Live Wine & Spirits Tasting Competition for its Vampire Merlot; and the Texas International Rodeo Wine

Competition. Further, the Los Angeles International Wine & Spirits Competition gave Vampire Cabernet Sauvignon a rating of 92 points out of 100. Plaintiff's highest-end wine, Trueblood Cabernet Sauvignon, has been rated 92 points and 97 points out of 100 by critics.

23. Plaintiff has spent substantial amounts of time and money establishing, advertising, and promoting its Vampire family of brands. Plaintiff has established valuable goodwill through its brands' popularity, its advertising and sales, and its websites (including www.Vampire.com). This goodwill is embodied by Plaintiff's Vampire Family marks.

**B. Defendants' Unauthorized Use of Plaintiff's Vampire Family Marks**

24. Defendants control and operate the website www.vampirecoffi.com from which they solicit orders, ship and sell to residents of California coffee marketed under the brand name Vampire Coffi. Defendants' website refers to their Vampire Coffi as the "blood of the bean" mimicking Plaintiff's trademark for SIP THE BLOOD OF THE VINE for sales of wine. Defendants sell various types of coffee unlawfully branded as Vampire Coffi, using the TM symbol, including a French vanilla, a Bali Blue Blood (mimicking Plaintiff's Trueblood wine), arabica, pumpkin spice and more. The entire vampirecoffi.com website is an infringement of Plaintiff's vampire.com website and Plaintiff's various Vampire family of trademarks.

25. A printout of Defendants' website showing images of Defendants' infringing products unlawfully bearing Plaintiff's VAMPIRE name is attached as Exhibit B.

26. Defendants use the word "vampire" to draw attention to their coffee products to improve the marketability and enhance sales of their infringing product.

27. All defendants' unlawfully profit from the sales on defendants' website www.vampirecoffi.com. Defendant Shopify takes approximately 5% plus 30 cents of each sale on the website, Defendants Calutech and Freitag take approximately 50% of each coffee sale, leaving approximately 45% for the ringleader defendant Merritt.

28. Defendants Shopify, Calutech and Freitag willfully cast a blind eye at the activities of those that infringe others' trademarks, including defendant Merritt, because it suits their business model to benefit off the infringing activities of others.

29. Defendant Shopify does more than just provide software that the other defendants use to infringe upon Plaintiff's trademarks. Defendant Shopify actively tracks everyone that frequents all Shopify shops, including the infringing Vampirecoffi.com shop and pesters them to buy whatever item one was looking at that happens to be put into a cart. Defendant Shopify sends its own email out to those browsing Defendant Merritt's vampirecoffi.com website sending messages such as, "Your bag is ready and waiting. The item in your bag is still available. Finish checking out before its gone."

30. Defendant Shopify encourages anyone, without vetting them to drop-ship coffee, using any brand name imaginable, whether it belongs to someone else or not, via the weblink: https://www.shopify.com/blog/9-dropshipping-coffee-suppliers.

31. Similarly, Defendants Calutech and Freitag encourages anyone, without vetting them to drop-ship coffee, using any brand name imaginable, whether it belongs to someone else or not, via the weblink https://www.oldchicagocoffee.com/dropshippers.php.

32. Neither defendant Shopify nor Calutech have a method for trademark registrants to notify them of infringing activity by others. Defendant Calutech has a phone number that no-one answers, and defendant

Shopify insists that anyone wanting to lodge a complaint regarding a violation of intellectual property must first obtain a Shopify login name which in turn requires one to sign a contract with Shopify accepting their terms and services, whatever they may be.

33.    Defendants' intentional and wrongful infringing acts are harming Plaintiff's brands' reputation, are diluting the Vampire Family brands, and are disparaging.

34.    If Defendants are not stopped from marketing their infringing products by using Plaintiff's VAMPIRE mark, or marks confusingly similar to vampire—then consumers will likely be confused about the source and origin of Defendants' products and services and mistakenly conclude that Defendants' products or services are associated with Plaintiff and/or its licensees.

35.    Alternatively, if Defendants are not stopped from using Plaintiff's VAMPIRE mark—or marks confusingly similar to vampire—then consumers will likely be confused about the source of Plaintiff's or its licensees' products and services and mistakenly conclude that Plaintiff's or its licensees' products or services are associated with Defendants.

## COUNT I
## VIOLATION OF LANHAM ACT 15 U.S.C. §1125(a)

36.    Plaintiff realleges the allegations in paragraphs 1 through 35.

37.    Defendants use of "Vampire," on the packaging and description and other marketing for its coffee products is identical to Plaintiff's trademark VAMPIRE.  Because the marks are identical, the marks are likely to engender the same connotation and overall commercial impression when considered in connection with Defendants' goods and services and with Plaintiff's coffee products, wines, spirits, ready-to-drink canned spirit cocktails, burgers, restaurant services, and other goods.

38. The goods and services for which Defendants unlawfully use the Vampire mark is identical to or closely related to the goods and services for which Plaintiff uses its VAMPIRE mark giving rise to the mistaken belief that the goods and services of the parties have the same source.

39. The likelihood of confusion is even greater given that both Plaintiff and defendants sell their coffee products online.

40. Furthermore, the channels of trade and class(es) of purchasers are the same for both Plaintiff's and Defendants' goods and services, and the price of Defendants' coffee products and Plaintiff's coffee products are similar, further resulting in a likelihood of confusion.

41. Defendants' use of the word "Vampire" so closely resembles Plaintiff's products and services that the public is likely to be confused and deceived, and to assume erroneously that Defendants' infringing products are produced by Plaintiff or under Plaintiff's direction; that Defendants' offerings are part of Plaintiff's family of brands; or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff—all to Plaintiff's detriment and irreparable damage.

42. Alternatively, Defendants' marketing and advertising efforts are likely to mislead consumers to believe that Plaintiff's goods and services may be the unauthorized use of Defendants' trademarks. If Defendants continue their wrongful acts, consumers are likely to be misled to believe that Plaintiff is misusing the VAMPIRE marks.

43. Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff, nor has Plaintiff approved or authorized any of the goods or services offered or sold by Defendants.

44. Plaintiff has no control over the nature and quality of the goods and services offered and sold by Defendants and its licensees. Any failure, neglect, or default by Defendants or its licensees in providing such products or

services will reflect adversely on Plaintiff as being the believed source of said failure, neglect, or default, thereby hampering Plaintiff's continuing efforts to protect its outstanding reputation and further build that reputation. Said failure, neglect, or default will irreparably harm Plaintiff by causing loss of revenue to Plaintiff and loss of value of Plaintiff's considerable expenditures to promote its goods and services under the VAMPIRE marks.

45. Without the knowledge or consent of Plaintiff, Defendants have marketed and sold in interstate commerce, and in commerce substantially affecting interstate commerce, products and services branded under the name VAMPIRE and continue to do so. Defendants have promoted, publicized, advertised, offered for sale, and sold products and services using the VAMPIRE mark (or marks confusingly similar to) through persons not authorized by, employed by, or associated in any way with Plaintiff, and they have used the VAMPIRE trademark as a false designation and false representation for alcoholic beverage products.

46. None of Defendants' activities described in this complaint have been authorized by Plaintiff. Defendants' unauthorized use of Plaintiff's trademarks and trade names in interstate commerce, or commerce substantially affecting interstate commerce, constitutes infringement and an inducement to infringe Plaintiff's trademarks and/or trade names. Such activities are likely to cause confusion, mistake, and to deceive the public at large.

47. Upon information and belief, Defendants have acted with the unlawful purpose of:

    a. Improperly taking advantage of the valuable goodwill belonging to Plaintiff;

    b. Soliciting Plaintiff's customers and potential customers, and attempting to sell and selling to such customers goods and

services marketed under the VAMPIRE marks through persons not authorized by, employed by, or associated in any way with Plaintiff;

c. Inducing others to infringe Plaintiff's trademarks and trade names; and

d. Causing the goods of persons not authorized by, employed by, or associated in any way with Plaintiff to be falsely represented as if they were rendered, authorized by, sponsored by, endorsed by, or otherwise connected with Plaintiff and its licensed trademarks and trade names.

48. Defendants' conduct, as alleged in this complaint, constitutes a violation of 15 U.S.C. § 1125(a).

49. If Defendants are allowed to continue marketing and selling the accused goods and services, Plaintiff will be damaged as alleged in this complaint and the Defendants will profit thereby. Furthermore, unless the Court permanently enjoins Defendants' infringing conduct, Plaintiff's business, goodwill, and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated and compensated in monetary damages.

50. This high-jacking of Plaintiff's VAMPIRE trademarks improved the marketability of Defendants' products as the use of the word "vampire" make Defendants' website and products more interesting. It led to more people hearing about Defendants' website and products leading them to come in and try other products sold by Defendants, thus lowering Defendants' costs to advertise.

51. Defendants are acting willfully and with an intent to use or abuse the goodwill Plaintiff has worked hard to develop. Plaintiff is therefore

1 entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

52. The intentional nature of defendant's acts makes this an exceptional case under 15 U.S.C. §1117(a).

## COUNT II
## VIOLATION OF LANHAM ACT 15 U.S.C. §1114

53. Plaintiff repeats each allegation contained in paragraphs 1 through 52 as though set forth herein at length.

54. Defendants have engaged in, and continue to engage in, the wrongful exploitation of Plaintiff's registered marks.

55. Defendants' goods are so closely related to Plaintiff's goods that the public is likely to be confused, be deceived, and erroneously assume that Defendants' Vampire branded goods and services, as packaged, advertised, promoted, and sold, are Plaintiff's, or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff—all to Plaintiff's detriment and irreparable damage.

56. Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff. Furthermore, Plaintiff has not approved any of the goods or services offered or sold by Defendants.

57. Defendants have acted willfully and with an intent to ride on, step on, or demolish the goodwill Plaintiff has worked hard to develop. Defendants' aforesaid infringing conduct has been willful and with knowledge that the sale, marketing, advertisement, and promotion of their accused products will hinder the future commercial success of Plaintiff's Vampire Family of brands, including its further foray into the food, cocktail, and

restaurant space. Plaintiff is therefore entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

## COUNT III
## VIOLATION OF LANHAM ACT 15 U.S.C. §1125c

58. Plaintiff repeats each allegation contained in paragraphs 1 through 57 as though set forth herein at length.

59. Plaintiff's Vampire family of brands have appeared on The View, Anderson Cooper, CNN Headline News, Entertainment Tonight, MTV's Viva La Bam, The Food Channel, and A & E. They have been written up in widely circulated magazines such as Star Magazine, Shape, Maxim, InStyle, Elle, Spin, Rolling Stone, Marie Claire, Cosmo Girl, and The Wine Enthusiast; as well as in regional newspapers such as the LA Times, the NY Times, and the Houston Chronicle. (*See* Exhibit A). As such, Plaintiff's brands have developed a fame all of their own, catapulting the Vampire brand into the category of a famous mark.

60. Plaintiff's associates and predecessors in interest periodically work with Hollywood film companies and engage in mutually beneficial promotions. For example, Plaintiff's products can be found in the Blade films (starring Wesley Snipes) and HBO's Trueblood Series. Plaintiff has done promotions connecting its Vampire family of brands to films such as the Underworld series (starring Kate Beckinsale) and Blade Trinity. Plaintiff's wines also have been featured and poured at film premiers for *Dusk Til' Dawn* (written by Quentin Tarantino) and *Dark Shadows* (starring Johnny Depp). A small sampling of the press talking about Plaintiff's Vampire family of brands is attached as Exhibit A.

61. Plaintiff fears that Defendants' use of the word Vampire as a mark for goods and services will ultimately cause consumers to believe that Plaintiff's branded wines, spirits, cocktails, coffee and restaurants are not of the

high quality that they actually are and will tarnish, dilute, and otherwise damage the reputation of Plaintiff's goods and services. This will lead to irreparable harm to Plaintiff's goodwill, reputation, and sales.

## COUNT IV
## VIOLATION OF LANHAM ACT 15 U.S.C. §1125(d)

62. Plaintiff repeats each allegation contained in paragraphs 1 through 61 as though set forth herein at length.

63. The Defendants are using a sound-a-like of Vampire Coffee, specifically Vampire Coffi and have created the website www.vampirecoffi.com.

64. Defendants are unlawfully and in bad faith profiting off the use of Plaintiff's VAMPIRE family of trademarks by maintaining a website with the sound-a-like name www.vampirecoffi.com as a url. When one googles Plaintiff's brand VAMPIRE coffee, defendants' website www.vampirecoffi.com comes up as one of the top four choices, sending traffic to the infringing website which sells the infringing products, fulfilled by Defendants Calutech and Freitag, and all defendants share financially from the unlawful enterprise.

65. Defendants have never had any bona-fide good use of the term VAMPIRE COFFI , nor could they since they are not the trademark owner. When consumers go to vampirecoffi.com they arrive at the Defendants' website which causes confusion amongst customers leading some customers to mistakenly infer that Plaintiff's have a new product line, or worse to perhaps question the legitimacy of Plaintiff's line of products.

66. Defendants are using vampirecoffi.com to divert consumers from vampire.com from which they can buy the authentic VAMPIRE coffee to their infringing website, vampirecoffi.com so that they can profit unlawfully.

67. Defendants chose vampirecoffi.com knowing that (or in the case of some defendants, failing to even do a competent trademark search to determine if) Plaintiff's had a pre-existing trademark for VAMPIRE for coffee.

68. Defendants are unlawfully profiting off Plaintiff's good will and business in the VAMPIRE family of registered trademarks and are using www.vampirecoffi.com in violation of 15 U.S.C. 1125 (d) and consequentially are liable to Plaintiff for damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. That the Court adjudge and decree that Defendants have falsely designated the origin of certain goods and services as those of Plaintiff, have made snd used false representations in connection with the sale, offering for sale, promotion and advertising of such goods and services, and have unfairly competed with Plaintiff at common law.

B. That the Court adjudge and decree that Defendants have infringed Plaintiff's registered VAMPIRE trademarks.

C. That the Court adjudge and decree that Defendants unlawfully diluted and diminished Plaintiff's rights in its Vampire Family marks.

D. That the Court adjudge and decree that Defendants unlawfully Induced others to infringe upon Plaintiff's trademarks.

E. That the Court adjudge and decree that Defendants have unlawfully cyber-squatted the use of Plaintiff's registered trademark VAMPIRE for coffee.

F. That the Court permanently enjoin Defendants, its agents, servants, employees, attorneys, and all persons acting in concert or participation with them or any of them from:

    a. Using VAMPIRE, or any other word or words which are similar to, or a colorable imitation of, Plaintiff's trade names and marks, either alone, as part of, or together with, any other word or

words, trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and promotion of food or beverage products and accessories.

b. Using VAMPIRE, or any other word or words which are similar to, or a colorable imitation of, Plaintiff's trade names and marks, either alone, as part of, or together with, any other word or words, trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and promotion of food or beverage products and accessories;

c. Selling, offering to sell, marketing, distributing, advertising, and promoting any food or beverage product, good, or service with the word VAMPIRE (or similar word) displayed on any product, packaging, advertising, or promotional materials;

d. Representing directly or indirectly by words or conduct that any food or beverage product, good, or service offered for sale, sold, promoted, or advertised by Defendant is authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff;

e. Aiding or abetting in unfair competition against Plaintiff;

f. Aiding or abetting in false advertising; and

g. Inducing others to engage in any of these aforementioned acts.

G. That the Court award an amount to be determined at trial, but at least an amount equivalent to treble the amount of Defendants' illicit profits *(including profits made by Defendants from all sales since they used Plaintiff's mark to bring customers in to buy other products)*, or Plaintiff's lost profits, whichever is greater.

H. That the Court award an amount to be determined at trial but at least

1  an amount equal to the cost of prospective corrective advertising.

2      I.  That the Court instruct and order the domain register, GODADDY.COM, LLC, for the domain www.vampirecoffi.com to transfer the domain to Plaintiff.

    J.  That the Court award Judgment against Defendants for the full costs of this action, including the attorney's fees reasonably incurred by Plaintiff.

    K. That the Court order such other further and different relief as the nature of this action may require and as the Court may deem just and proper.

    L. That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff, in its discretion, to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement of compliance therewith, and/or for the punishment of any violation thereof.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all triable issues raised by the Complaint.

DATED this 19th day of June, 2023.

    Respectfully submitted by:

    *Michael Machat*

    Michael Machat, Esq.
    MACHAT & ASSOCIATES, P.C.
    8730 W. Sunset Blvd., Suite 250
    West Hollywood, California 90069
    Telephone: (310) 860-1833
    Email: michael@machatlaw.com
    *Counsel for Plaintiff*